IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| AMBER NEDDO, as guardian and next friend to Z.N., C.B., A.B., and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>MONSANTO COMPANY, SOLUTIA INC., and PHARMACIA LLC,<br><br>        Defendants. | Case No. 2:23-cv-396-GWC |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 1

    I.      Old Monsanto's Commercial Sale of PCBs Was Not a "Release" "From" a Facility Into "the Air, Land, Surface Water, or Groundwater" ............................... 1

    II.     Because § 7202 Does Not Apply Retroactively, It Cannot Reach Old Monsanto's Long-Past Conduct ............................................................................. 6

    III.    The Complaint Does Not Satisfy the Statute's Other Elements ............................. 8

    IV.    The Opposition Does Not Cure the Class Standing Defects ................................ 10

CONCLUSION ............................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

### Cases

*A.B. v. S.U.*,
 298 A.3d 573 (Vt. 2023) ................................................................................................6

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ......................................................................................................9

*Barrows v. Becerra*,
 24 F.4th 116 (2d Cir. 2022) ........................................................................................10

*Bourgeois v. A.P. Green Indus., Inc.*,
 716 So. 2d 355 (La. 1998) ............................................................................................9

*Bower v. Westinghouse Elec. Corp.*,
 522 S.E.2d 424 (W. Va. 1999) .....................................................................................8

*Carpenter v. Vt. Dep't of Motor Vehicles*,
 465 A.2d 1379 (Vt. 1983) .........................................................................................6, 7

*Conn. Pipe Trades Health Fund v. Philip Morris, Inc.*,
 153 F. Supp. 2d 101 (D. Conn. 2001) ..........................................................................8

*Curtis v. Aetna Life Ins. Co.*,
 648 F. Supp. 3d 358 (D. Conn. 2023) ........................................................................10

*Erickson v. Pharmacia LLC*,
 548 P.3d 226 (Wash. Ct. App. 2024) ...........................................................................9

*Leas v. Leas*,
 737 A.2d 889 (Vt. 1999) ...............................................................................................5

*Mason Cap., Ltd. v. Kaman Corp.*,
 2005 WL 2850083 (D. Conn. Oct. 31, 2005) ..............................................................7

*Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*,
 775 F.3d 154 (2d Cir. 2014) .......................................................................................10

*Rodriguez v. United States*,
 480 U.S. 522 (1987) ......................................................................................................5

*Shires Hous., Inc. v. Brown*,
 172 A.3d 1215 (Vt. 2017) .............................................................................................5

*State v. Baker*,
    177 A.3d 1093 (Vt. 2017) ...............................................................................................8

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
    226 F. Supp. 3d 288 (D. Vt. 2016) .................................................................................7

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
    2017 WL 3726435 (D. Vt. May 1, 2017) ......................................................................2

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
    431 F. Supp. 3d 448 (D. Vt. 2019) .................................................................................7

*Town of Westport v. Monsanto Co.*,
    877 F.3d 58 (1st Cir. 2017) ............................................................................................9

*United States v. Union Corp.*,
    277 F. Supp. 2d 478 (E.D. Pa. 2003) .............................................................................5

*In re Vebeliunas*,
    332 F.3d 85 (2d Cir. 2003) .............................................................................................7

## Statutes

Vt. Stat. Ann. tit. 12, § 7201 ..............................................................................1, 2, 3, 4

Vt. Stat. Ann. tit. 12, § 7202 ....................................................................1, 2, 3, 4, 7, 9

## Regulation

40 C.F.R. § 300.5 ..............................................................................................................5

## Other Authority

Black's Law Dictionary (11th ed. 2019) ........................................................................2

# INTRODUCTION

The text of Vermont's medical-monitoring statute forecloses the expansive theory of liability advanced in Plaintiff's Opposition ("Opp.") to Defendants' Motion to Dismiss ("Mot."). By its terms, the statute governs the "release" of chemicals "from" a "large facility" into "the air, land, surface water, or groundwater." Vt. Stat. Ann. tit. 12, §§ 7201(11), 7202(a). It cannot be expanded to impose liability for the mere *sale of chemicals* in the ordinary course of the commercial supply chain, and the only "release" Plaintiff asserts here was Old Monsanto's alleged sale of PCBs to third-party manufacturers that incorporated those PCBs into finished products that were eventually used in the Cabot School. Nor can the statute be applied retroactively. When the statute was enacted in 2022, it imposed new potential liability on owners or operators of large facilities, and there is no dispute that it lacks retroactive language or that all of Old Monsanto's conduct long predated 2022. Dismissal is also warranted because the Opposition cannot excuse the Complaint's failure to plead key elements of its medical-monitoring claim, such as proximate cause, a significantly greater exposure rate than the general population, and the necessity or reasonable cost of medical monitoring. Finally, even if Plaintiff could state a claim for her children, she would lack standing under Second Circuit precedent to bring claims for other members of the putative class—staff and other students of various ages from numerous different schools—because the proof needed to establish these diverse claims varies widely, depriving Plaintiff of a concrete interest.

# ARGUMENT

**I. Old Monsanto's Commercial Sale of PCBs Was Not a "Release" "From" a Facility Into "the Air, Land, Surface Water, or Groundwater"**

As Defendants explained (Mot. 11–16), under no fair reading of Vermont's medical-monitoring statute could it be applied to companies like Old Monsanto, whose only relevant conduct was making and selling chemicals in the ordinary course of business. By its plain terms, the statute

1

provides a medical-monitoring remedy only "against a person who is the owner or operator of a large facility *from which a proven toxic substance was released*." Vt. Stat. Ann. tit. 12, § 7202(a) (emphasis added). The term "release" is statutorily defined, referring to "any act or omission that allows a proven toxic substance *to enter the air, land, surface water, or groundwater*." *Id.* § 7201(11) (emphasis added). Read as a whole, the statute thus has a clear and limited scope: It extends to large-facility owners and operators whose actions and inactions permit toxic substances to escape their facilities directly into the environment. It does not reach manufacturers who merely *sell* chemicals. That natural reading of the statutory text accords with the ordinary meaning of the term "release." *Black's Law Dictionary* 1543 (11th ed. 2019) ("release," in the "[e]nvironmental law" context, means "[t]he injection of contaminants or pollutants into the environment as a side effect of operations such as manufacturing, mining, or farming"). And it fits the historical context that prompted the Legislature to act—emission of chemicals from Saint-Gobain's Bennington-area facilities "directly into the ground through waste disposal." *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 2017 WL 3726435, at *2 (D. Vt. May 1, 2017); *see* Mot. 5–6, 11–16. Plaintiff does not allege that the PCBs in this case—which were undisputedly made at and sold from facilities in Alabama and Illinois, Opp. 8 n.4—"enter[ed]" into the Cabot School "from" those facilities. Vt. Stat. Ann. tit. 12, §§ 7201(11), 7202(a). That simple, undisputed fact ends the inquiry— the statute does not apply.

Plaintiff's contrary reading of § 7202 is irreconcilable with the statutory text and historical context. In Plaintiff's view, Old Monsanto's "sale of PCBs for use in building and electrical products"—even hundreds of miles away, from "Alabama and Illinois facilities"—was *itself* an "act that 'allowed'—*i.e.*, permitted—the PCBs to 'enter the air, land, surface water, or groundwater' of the Vermont schools as those products degraded." Opp. 6–7; *see id.* at 8 n.4. But the statutory

2

definition of "release" forecloses that expansive view. A "release" is any "act or omission *that allows*" a toxic substance "*to enter* the air, land, surface water, or groundwater," meaning that the act *itself*—here, PCB sales from Alabama and Illinois—must permit chemicals to enter the environment. Vt. Stat. Ann. tit. 12, § 7201(11) (emphases added). The Complaint alleges no facts suggesting that Old Monsanto's far-away and long-ago *sale* of PCBs allowed PCBs to be released into Vermont schools. To the contrary, Plaintiff admits that, rather than entering the environment, the PCBs sold by Old Monsanto were incorporated into third-party manufacturers' "building and electrical products," which in turn were sold to *other* third parties, who installed the products in Vermont schools and failed to replace them, thereby allowing them to release PCBs as the "products degraded." Opp. 7; *see*, *e.g.*, Compl. ¶ 5 (alleging that PCBs "escaped from" their "applications," *i.e.*, the third-party products); *id.* ¶ 65 (similar); Opp. 7 ("there is virtually no way to prevent PCBs from leaking from their intended applications"). It is that final "act or omission"—the installation of, and failure to replace, PCB-containing finished products manufactured by third parties—that "allow[ed] a proven toxic substance to enter the air" at the Cabot School, not Old Monsanto's temporally and geographically distant sale of PCBs to unnamed third-party manufacturers.

Each of Plaintiff's other attempts to circumvent this clear statutory meaning fails. Plaintiff first accuses Defendants of improperly reading into the statute a requirement that there be a "direct emission." Opp. 8. But the statute need not use "the modifier 'directly'" to exclude Plaintiff's boundless reading. *Id.* By its terms, the statute provides a remedy only when there is a "releas[e]" "*from*" a "large facility." Vt. Stat. Ann. tit. 12, § 7202(a) (emphasis added). No user of the English language would say that a chemical "enters" the "air, land, surface water, or groundwater" "from" a facility simply because the facility sold the chemical to a third party. *Id.* §§ 7201(11), 7202(a). Plaintiff protests that a "sale" *can* be referred to as a "release," in the metaphorical sense of

3

"'releasing' items into the stream of commerce." Opp. 8–9 (citing two cases). But that metaphor only proves Defendants' point: If a sale is a release "into the stream of commerce," *id.* at 8, it is not covered by the medical-monitoring statute, which applies only to the release of chemicals into "*the air, land, surface water, or groundwater*," Vt. Stat. Ann. tit. 12, § 7201(11) (emphasis added).

Plaintiff also argues that the word "any" is broad and that Old Monsanto's manufacture of PCBs "allowed" PCBs to enter the environment, in the sense that PCBs could not have been emitted from third parties' finished products into the Cabot School if Old Monsanto had never made them. Opp. 7–8. But the words "any" and "allows" do not exist in isolation. While they expand the types of acts constituting a "release" beyond, for example, intentionally dumping toxic chemicals into a river—"any act or omission that allows" a proven toxic substance to enter the environment will suffice—they do not change the statutory requirement that the "act or omission" at issue be one that actually "allows" the toxic substance to "enter the air, land, surface water, or groundwater." Vt. Stat. Ann. tit. 12, § 7201(11); *supra*, at 2–3. Nor do they change the requirement that this "releas[e]" of chemicals into the environment be "*from*" a "large facility." Vt. Stat. Ann. tit. 12, § 7202(a) (emphasis added); *supra*, at 3. The Court should reject Plaintiff's attempt to isolate statutory language rather than reading it as a whole, especially since myriad sources recognize that environmental statutes generally are not concerned with the sale of substances. Mot. 14–15.[1]

Plaintiff counters that the term "release" has a broader meaning than "disposal," Opp. 8, but this misses the point. Whether the statute is focused specifically on disposal or more broadly on release, the salient point is that environmental statutes and regulations generally target the

---

[1] Plaintiff shrugs off the different statutory language in Vermont's Waste Management Act—which, unlike § 7202, *explicitly* extends liability for a release to manufacturers, Mot. 15 n.8—because, she says, Old Monsanto operated a large facility. Opp. 9 n.5. But that is not responsive. The Waste Management Act shows that more specific language than that in § 7202 is needed to hold a manufacturer liable for the release of a substance from a third-party finished product.

4

entities responsible for a pollutant's actual *entry into the environment*—and the sale of a chemical or other product does not constitute its release or disposal. *See, e.g.*, *United States v. Union Corp.*, 277 F. Supp. 2d 478, 491 (E.D. Pa. 2003) ("The sale of a useful product does not constitute the 'handling, storage, treatment, transportation, or disposal of any solid waste or hazardous waste.'"); 40 C.F.R. § 300.5 (defining "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment"). Nothing in § 7202 indicates a departure from that settled understanding of environmental statutes.

In the end, Plaintiff resorts to various "public policy considerations" and purposes that purportedly warrant extending the statute to Old Monsanto. Opp. 9–11. But Plaintiff offers no reason to believe that the Legislature had companies like Old Monsanto in mind when it enacted this statute, given the context of Saint-Gobain's emissions from its Bennington facilities. Mot. 5–6, 16. And, in any event, "no legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987). Legislatures instead "operate in a practical world of compromise that intentionally creates narrow and limited responses to problems." *Leas v. Leas*, 737 A.2d 889, 892 (Vt. 1999). It is the text of the statute, then, that tells us both its purpose *and* how it accomplishes that purpose. *See Shires Hous., Inc. v. Brown*, 172 A.3d 1215, 1219 (Vt. 2017).

A contrary result would produce absurd results. If the lawful sale of a chemical is a "release" into the environment simply because the "products" it will be used in eventually "degrad[e]" over time, Opp. 7, chemical manufacturers across the country would face liability in Vermont, no matter how safely they operate their own processes. The Vermont Legislature did not enact such a sweeping regime. Instead, the medical-monitoring statute regulates the owners or operators of large facilities that allow toxic substances to be released directly into the environment from those facilities. Plaintiff does not contend that Old Monsanto meets those criteria; accordingly, the Court

5

should dismiss the Complaint with prejudice.[2]

## II. Because § 7202 Does Not Apply Retroactively, It Cannot Reach Old Monsanto's Long-Past Conduct

Section 7202 cannot be applied to Old Monsanto for a second reason: The conduct at issue ceased decades before Vermont's medical-monitoring statute was enacted. Mot. 17–19.

Plaintiff does not dispute most aspects of this argument. There is no dispute that "'the act [that] triggers application of'" the medical-monitoring provision is Old Monsanto's manufacture and sale of PCBs, *Carpenter v. Vt. Dep't of Motor Vehicles*, 465 A.2d 1379, 1382 (Vt. 1983), or that those acts ceased by 1979, long before § 7202's effective date in 2022, *see* Compl. ¶¶ 10, 20, 29, 35. Plaintiff also does not contest that § 7202 is a new statute that lacks the explicit language— found in a neighboring section of the same legislation, *see* 2022 Vt. Act No. 93, § 2—necessary for it to apply retroactively. *See A.B. v. S.U.*, 298 A.3d 573, 580 (Vt. 2023). That ought to settle the issue: Section 7202 cannot apply to Old Monsanto's manufacture and sale of PCBs.

Plaintiff's only response is that § 7202 can apply to conduct that predated the statute because the provision purportedly does not "impose a new liability," reasoning that "this Court recognized a common-law right to sue for medical monitoring in Vermont before the enactment of § 7202." Opp. 12. That view is mistaken for at least two reasons.

*First*, even if the legislative act of codifying a common-law claim exempted statutes from retroactivity concerns, that is not what the Legislature did when it enacted § 7202. No Vermont court had ever recognized a medical-monitoring cause of action before the Legislature enacted § 7202. While this Court *predicted* that Vermont courts would recognize medical monitoring as a *remedy* for existing tort claims, it also acknowledged that no "reported decision in Vermont" had

---

[2] Plaintiff asks for leave to amend unless "amendment would be futile." Opp. 25. It would be, because of this foundational flaw and a similarly incurable retroactivity problem. *See infra* at 6–8.

6

ever done so.  *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 431 F. Supp. 3d 448, 451, 466 (D. Vt. 2019).  Of course, only Vermont state courts can ultimately determine what Vermont law is.  *See In re Vebeliunas*, 332 F.3d 85, 91 (2d Cir. 2003); *Mason Cap., Ltd. v. Kaman Corp.*, 2005 WL 2850083, at *1 (D. Conn. Oct. 31, 2005) (the court's *Erie* guess "will be binding only upon the parties to this case," and "any Connecticut court will be free to ignore" it).  Without any word from a Vermont state court before *Sullivan* or since, § 7202 cannot be said to codify a preexisting common-law claim.  If anything, the Legislature's adopting the medical-monitoring statute as the "exclusive remedy for a person . . . to seek medical monitoring," Vt. Stat. Ann. tit. 12, § 7202(d)(1), suggests that the Legislature did not view the common law as clear on this point.

*Second*, even if the Legislature, in looking to *Sullivan*, could be said to have been drawing from Vermont common law, § 7202 still imposes a "'new duty'" on Old Monsanto.  *Carpenter*, 465 A.2d at 1382.  Section 7202—a new statute—establishes a new "cause of action" that *Sullivan* did not recognize.  Vt. Stat. Ann. tit. 12, § 7202(a).  *Sullivan* viewed "medical monitoring as a form of injunctive relief . . . *not* as a new cause of action."  431 F. Supp. 3d at 451 (emphasis added).  Any similarities to the common law therefore do not support retroactivity here.  More than that, Plaintiff's expansive view of § 7202 would impose medical-monitoring liability far beyond *Sullivan*'s reach.  Plaintiff says § 7202 applies to the original manufacturer of a toxic substance (who owns or operates a large facility anywhere in the world) if—at any time in the future—that substance ends up in the environment in Vermont, no matter how far removed from the initial sale.  *Sullivan* merely predicted that a Vermont court would recognize a medical-monitoring remedy based on "the particular facts" of that case, 431 F. Supp. 3d at 450, where Saint-Gobain allegedly discharged a substance from its Bennington facilities directly "into the soil and water," contaminating the water "around the facility," *Sullivan v. Saint-Gobain Performance Plastics Corp.*,

7

226 F. Supp. 3d 288, 291–92 (D. Vt. 2016).³  In short, even compared to *Sullivan*, § 7202 imposes a new burden and thus cannot be applied to Old Monsanto's long-ago conduct.

**III.    The Complaint Does Not Satisfy the Statute's Other Elements**

In addition, the Complaint fails to plead facts supporting other elements of the claim.

***Causation.***    While the Opposition finally advises Defendants of Plaintiff's theory of tortious conduct (negligence), Opp. 14–17, it does not cure the Complaint's failure to allege that Old Monsanto proximately caused Plaintiff's children to be exposed to PCBs at the Cabot School, Mot. 21–22.  Plaintiff contends that § 7202 requires that she plead only a but-for link between Old Monsanto's conduct and her children's exposure, Opp. 18, emphasizing that § 7202(a)(4) requires that an increased risk of disease be "a proximate result" of exposure, while § 7202(a)(3) says only that exposure must be "a result of" the defendant's tortious conduct.

That misreads the statute.  Section 7202(a)(3) links the phrase "as a result of" to the defendant's "tortious conduct" and thus incorporates the *underlying tort's* causation standard.  *See Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 433 (W. Va. 1999) ("underlying liability must be established based upon a recognized tort—*e.g.*, negligence, strict liability, trespass, intentional conduct"); *cf. Conn. Pipe Trades Health Fund v. Philip Morris, Inc.*, 153 F. Supp. 2d 101, 112–13 (D. Conn. 2001) (looking to common-law causation principles in interpreting "as a result of" language in unfair trade practices statute).  For a negligence claim like Plaintiff's, that includes proximate cause.  *State v. Baker*, 177 A.3d 1093, 1098 (Vt. 2017).  Section 7202(a)(4) then clarifies that regardless of the underlying tort's causation standard, the alleged exposure caused by the tortious conduct must have proximately caused the increased risk of harm.

---

³ While the Office of Legislative Counsel did note that § 7202 limits the class of defendants compared to *Sullivan* (rather than, say, a homeowner being susceptible to a medical-monitoring suit, now only a large-facility owner or operator is), *see* Mot. 6, that does not mean that *Sullivan* envisioned far-reaching liability extending to distant, upstream manufacturers like Plaintiff seeks here.

8

Plaintiff contends that the Complaint's allegations nonetheless suffice, Opp. 19, but never explains how her allegations show that Old Monsanto could reasonably have foreseen, at the time of manufacture and sale, that the products into which third parties incorporated its PCBs would emit PCBs into schools, decades later, at such levels that they might cause an increased risk of serious harm. *See Town of Westport v. Monsanto Co.*, 877 F.3d 58, 65–67 (1st Cir. 2017) (granting defendants summary judgment for lack of foreseeability in similar circumstances).[4]

***"Significantly Greater" Exposure.*** Section 7202 requires that Plaintiff plead that her children were exposed to PCBs "at a rate significantly greater than the general population." Vt. Stat. Ann. tit. 12, § 7202(a)(1). But the Complaint does not allege how long her children attended the Cabot School or which parts of the school they used. Mot. 21–22. That is especially problematic given the Complaint's reliance on incomplete, inaccurate PCB test results at the school that were later clarified by judicially noticeable materials excluded from the Complaint. *Id.*

Plaintiff contends that she had no obligation to plead facts relevant to her children's alleged exposure, Opp. 21, but exposure "significantly greater than the general population['s]" is an element of the claim that must be pleaded with plausible non-conclusory facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And exposure is a product of time and concentration. Mot. 21 (citing *Bourgeois v. A.P. Green Indus., Inc.*, 716 So. 2d 355, 360 (La. 1998)). Without that basic information about her children's alleged exposure, Plaintiff has not "'nudged [her] clai[m] . . . across the line from conceivable to plausible'" and thus has not stated a claim. *Iqbal*, 556 U.S. at 680.

***Necessary and reasonable.*** For similar reasons, the Complaint fails to plead that medical monitoring is either necessary or reasonable in cost. Mot. 22–23. Plaintiff's responses merely

---

[4] Further, the Washington state jury verdicts that Plaintiff cites, Opp. 19, are each subject to reversal under the Washington Court of Appeals' recent decision in *Erickson v. Pharmacia LLC*, 548 P.3d 226 (Wash. Ct. App. 2024).

reiterate the Complaint's inapposite studies and threadbare recitals about cost.  Opp. 22.

### IV. The Opposition Does Not Cure the Class Standing Defects

Even if Plaintiff had stated a claim, she would lack class standing because the class she proposes would comprise staff members and children of different ages, who used different classrooms at different times at different schools.  Mot. 23–25.  Plaintiff protests that these considerations are more properly dealt with at the class-certification stage, Opp. 23, but does not deny that Second Circuit precedent treats disparities like these here as "distinct" Article III issues, *e.g.*, *Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014); *see Curtis v. Aetna Life Ins. Co.*, 648 F. Supp. 3d 358, 369–73 (D. Conn. 2023).

Plaintiff also wrongly asserts that class standing is satisfied any time "the named plaintiff's injuries and the absent class members' injuries originate from a defendant's common conduct." Opp. 24.  A defendant's common conduct is not alone sufficient:  Class standing turns on whether "the proof contemplated for all of the claims would be sufficiently similar." *Policemen's Fund*, 775 F.3d at 161; *see Curtis*, 648 F. Supp. 3d at 366 (considering "the proof required to establish the claim").  In some cases—such as when the claim turns entirely on a single legal question—the defendant's common conduct will be the only proof needed.  *Barrows v. Becerra*, 24 F.4th 116, 122, 129 (2d Cir. 2022) (examining whether Medicare reclassification system denied due process due to lack of appeals procedure).  But, in others, even a single "policy of 'inaction'" by the defendant will not be enough because of the need for individualized proof.  *Policemen's Fund*, 775 F.3d at 162.  The proof here will vary person to person based on age, the length of time a person worked at or attended a school, and which school it was, just to name a few factors.  Plaintiff has no interest in developing that proof for anyone other than her three children.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint with prejudice.

| | |
|---|---|
| Dated:  August 2, 2024 | /s/ Ian P. Carleton |
| | |
| | Ian P. Carleton, Esq. |
| | Alexandrea L. Nelson, Esq. |
| | Devin T. McKnight, Esq. |
| | Hannah C. Waite, Esq. |
| | SHEEHEY FURLONG & BEHM P.C. |
| | 30 Main Street, 6th Floor |
| | P.O. Box 66 |
| | Burlington, VT 05402-0066 |
| | P: (802) 864-9891 |
| | |
| | /s/ Lauren R. Goldman |
| | |
| | Lauren R. Goldman (*pro hac vice*) |
| | GIBSON, DUNN & CRUTCHER LLP |
| | 200 Park Avenue |
| | New York, NY 10166 |
| | P: (212) 351-4000 |
| | F: (212) 351-4035 |
| | |
| | Amir C. Tayrani (*pro hac vice*) |
| | Russell B. Balikian (*pro hac vice*) |
| | Zachary Tyree (*pro hac vice*) |
| | GIBSON, DUNN & CRUTCHER LLP |
| | 1050 Connecticut Avenue NW |
| | Washington, DC 20036 |
| | P: (202) 955-8500 |
| | F: (202) 467-0539 |
| | |
| | *Counsel for Monsanto Co., Solutia Inc., and Pharmacia LLC* |